IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| **KATRINA CLEMONS,** | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:24-CV-962 |
| | § | |
| **WALMART, INC.,** | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND**

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Katrina Clemons, hereinafter called Plaintiff, complaining of and about Walmart, Inc., hereinafter called Defendant, and for cause of action shows unto the Court the following:

**PARTIES AND SERVICE**

1. Plaintiff Katrina Clemons is a citizen of the United States and the State of Texas and resides in Johnson County, Texas.

2. Defendant Walmart, Inc. is a domestic corporation that may be served by serving its registered agent, CT Corporation System., 1999 Bryan Street, Suite 900, Dallas, Texas 75201. *Issuance of a summons is hereby requested.*

**JURISDICTION**

3. Jurisdiction is proper in this Court because this case has federal question jurisdiction over civil rights matters under 28 U.S.C. §§ 1441, 1443, and 1446. This Court has supplemental jurisdiction over state law claims discussed below under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

4. This Court has supplemental jurisdiction over state law claims discussed below

under 28 U.S.C. Section 1367(a) because they arise out of the same case or controversy.

## NATURE OF ACTION

5. This is an employment action brought under the Americans With Disabilities Act of 1990 and its amendments of 2008 (ADA), Rehabilitation Act of 1973, and Chapter 21 of the Texas Labor Code, all of which prohibit employment discrimination for persons with disabilities.

## CONDITIONS PRECEDENT

6. All conditions precedent to jurisdiction have occurred or been complied with a charge of discrimination was filed with the Equal Employment Opportunity Commission within three hundred days of the acts complained of herein, and Plaintiff's Complaint is filed within ninety days of Plaintiff's receipt of the Equal Employment Opportunity Commission's issuance of a right to sue letter.

## FACTS

7. At all times relevant to this lawsuit, defendant Walmart, Inc. ("Walmart") acted and demonstrated an employment relationship with Plaintiff.

8. Plaintiff worked in the electronics department of Walmart Store #3613 in Crowley, Texas.

9. The Store Manager of Walmart Store #3613 was Jason White ("White").

10. Mr. White routinely confronted Plaintiff as well as Plaintiff's management team including her direct managers Luis Dominguez ("Dominguez") and Justin Rawls ("Rawls") with regards to Plaintiff's work habits, use of electric carts, standing and sitting preferences for Plaintiff, disability, disability accommodations, and Plaintiff's general work habits.

11. White told Rawls that Plaintiff needed to prove her disability and needed a medical doctor's note.

12. Rawls then informed Plaintiff that she needed to prove her disability and bring a medical doctor's note per the request of Store Manager White.

13. White also ordered Walmart employees to retrieve the cart from Plaintiff after she required it to make her way to the electronics department. This became a regular occurrence.

14. White became so obsessed and so frustrated that Plaintiff had a disability and needed the electric cart, that he told Plaintiff she was not allowed to use the electric cart but that she could use a push wheel basket to lean on to walk back to the electronics department.

15. Walmart routinely has multiple electric carts and there were several available at all relevant times. Plaintiff's use of the electric cart did not constitute entire use of electric cart fleet.

16. White never confronted anyone else at the store about their disability, this includes other employees or other customers. But White made it his mission to watch Plaintiff whenever he was at work.

17. Plaintiff's disability does not allow her to walk that far of a distance but White did not care. He continued to order Plaintiff's managers to make sure that Plaintiff did not use any electric carts. He also ordered other Walmart employees to retrieve cart from Plaintiff. This harassment and discrimination continued for some time.

18. On January 25, 2023, Plaintiff came into work early to gather and buy some items from the store. Plaintiff was on the electric scooter when White abruptly and hostilely confronted Plaintiff demanding to know if she was "on the clock" working or not. Plaintiff was not "on the clock" and completed some personal shopping on her personal time.

19. White ordered Plaintiff, as Store Manager of Walmart #3613, to tell Rawls, her direct supervisor, to contact him upon her clocking in to work. Plaintiff let him know she would, once she was on the clock and when she finished her personal shopping.

20. White was extremely agitated and hostile making a scene in front of other employees as well.

21. Immediately preceding this abrupt and hostile confrontation, an employee that Plaintiff knew, told Plaintiff, per orders of White, she needed to get off the electric cart so that she could confiscate the cart.

22. Plaintiff was not sure what to do as she is literally disabled and could not carry groceries, walk, and then proceed to work without the electric cart. There was no other cart to use. Plaintiff began to panic and phoned her immediate family.

23. Plaintiff ultimately reported White and the incident to Defendant. Ultimately nothing would be done to rectify this problem and Plaintiff's call for help was essentially voided by Defendant.

24. Plaintiff ultimately called her daughter to come help her as she did not know what to do. Plaintiff's daughter arrived and was upset because of the treatment of her mother.

25. Another manager, General Merchandise Coach, Justin Walker ("Walker") talked to Plaintiff's daughter and let Plaintiff's daughter know that Plaintiff was allowed to use the electric cart to put up her groceries and proceed to work. Walker said the other employee was instructed to return the electric cart after Plaintiff was done. Eventually Plaintiff's daughter left the store.

26. At this point, Ms. Clemons was told by management to clock out and leave for the day. Plaintiff did in fact leave for the day.

27. Following this incident, Plaintiff was terminated.

## ADA - DISABILITY DISCRIMINATION AND FAILURE-TO-ACCOMMODATE CLAIMS

28. Plaintiff incorporates all preceding paragraphs herein.

29. The Americans With Disabilities Act of 1990 (ADA) along with the Americans With Disabilities Act Amendments Act of 2008 (ADAAA) prohibit an employer from 'discriminat[ing] against a qualified individual on the basis of disability,' by, among other things, terminating an individual's employment." *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 479 (5th Cir. 2016) (alteration in original) (quoting 42 U.S.C. § 12112(a)). "To establish a prima facie discrimination claim under the ADA, a plaintiff must prove: (1) that he has a disability; (2) that he was qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his disability." *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (alteration in original) (quoting *Zenor v. El Paso Healthcare Sys., Ltd.*, 176 F.3d 847, 853 (5th Cir. 1999)).

30. The ADA also "requires an employer to make 'reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Delaval*, 824 F.3d at 481 (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure-to-accommodate claim, the plaintiff must show "(1) [he] is a 'qualified individual with a disability;' (2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Feist*, 730 F.3d at 452.

31. A plaintiff can establish that he is "qualified" by showing that "either (1) [he] could perform the essential functions of the job in spite of [his] disability," or "(2) that a reasonable accommodation of [his] disability would have enabled [him] to perform the essential functions of the job." *LHC Grp.*, 773 F.3d at 697 (quoting *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1093 (5th Cir.1996)). "Time off, whether paid or unpaid, can be a reasonable accommodation, but an employer is not required to provide a disabled employee with indefinite leave." *Delaval*, 824 F.3d at 481. Furthermore, reassignment to a different job may be a reasonable accommodation, but "[t]he plaintiff bears the burden of proving that an available position exists that he was qualified for and could, with

reasonable accommodations, perform." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007) (citation omitted); *see also Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 810 (5th Cir. 1997) ("For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant.").

32. The case law is clear. A plaintiff must establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

33. Here, Plaintiff meets the three-prong test to establish a prima facie claim of discrimination about the ADA. First, it is clear Plaintiff has a disability. She required an electric cart to walk around the store to her job position in Walmart electronics. Numerous levels of management discussed her disability even requesting medical records directly from Plaintiff.

34. Secondly, Plaintiff was qualified for the position. Plaintiff had been working at Walmart stores previously and had been recently transferred to the Crowley Walmart location. Before working at the Crowley store, Plaintiff had no issues and completed her work and her work shift on time as required.

35. Finally, Plaintiff meets the third prong because Plaintiff was terminated based on Defendant's actions and requests. Defendant also tarnished her job reference and future employment opportunities. Additionally, Plaintiff failed to accommodate by forcing Plaintiff off the electric car and attempting to force her to use a manual pushcart to walk to her shift.

36. Plaintiff also prevails on a failure-to-accommodate claim. First, Plaintiff is a

qualified individual with a disability.

37. Next, Plaintiff made Defendant aware of her disability, but every time Plaintiff attempted to use the accommodations, Defendant questioned, harassed, and intimidated Plaintiff.

38. Finally, Defendant made zero accommodations to help with Ms. Clemon's disability. In fact, Defendant tried to make it even more difficult for Plaintiff to perform her job duties by willfully ignoring and willfully and aggressively impeding Ms. Clemon's need for an electric cart. Walmart regularly stocks multiple electric carts and at all relevant times, there were several electric carts available. Defendant willfully wanted to harass and make Plaintiff's job even more difficult by abusing her via her disability.

39. Defendants, by and through their agents, discriminated against Plaintiff in connection with the compensation, terms, conditions and privileges of employment or limited, segregated or classified Plaintiff in a manner that would deprive or tend to deprive him of any employment opportunity or adversely affect his status because of Plaintiff's disability in violation of the Americans With Disabilities Act. The unlawful employment practices of Defendants, specifically the discrimination of Plaintiff because of her disability, the increased scrutiny, and harassment, and wrongful disciplinary action had a disparate and adverse impact on Plaintiff. Such employment practices were not based on any reasonable factor other than disability.

## ADA - RETALIATION CLAIMS

40. Plaintiff incorporates all preceding paragraphs.

41. The ADA states that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

42. *McDonnell Douglas* provides the burden-shifting framework for claims of unlawful retaliation under the ADA. *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1112 (5th Cir. 1998). It says that "to show an unlawful retaliation, a plaintiff must establish a prima facie case of (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action." *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 348−49 (5th Cir. 2019) (quoting *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)); *see also Credeur*, 860 F.3d at 797 (same). If "the plaintiff has established a prima facie case, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment action." *Nall*, 917 F.3d 335, 349 (5th Cir. 2019) (quoting Seaman, 179 F.3d at 301). If the defendant does so, "the plaintiff must adduce sufficient evidence that the proffered reason is a pretext for retaliation. Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred." *Id*.

43. Here, Plaintiff engaged in activity protected by the ADA. Plaintiff filed a complaint and grievance because of her disability which is protected to file a complaint or grievance when a corporation is not following legal ethical employment practices. Also, Plaintiff had a disability and was legally protected and entitled to appropriate accommodations.

44. Plaintiff was subsequently not taken seriously and then when her disability was acknowledged she immediately was reprimanded by White and other Walmart employees. When Plaintiff made it clear that she could not be discriminated or harassed based on her disability, she was terminated—another violation of a protected activity.

45. All these efforts to intimidate and harass Plaintiff ultimately resulted in her being terminated.

46. Plaintiff suffered damages for which Plaintiff herein sues.

## CHAPTER 21 TEXAS LABOR CODE – HOSTILE WORK ENVIRONMENT

47. Plaintiff incorporates all preceding paragraphs herein as if set forth at length.

48. Plaintiff asserts a violation of Tex. Lab. Code 21.051 under the Texas Commission on Human Rights Act (TCHRA). The code states:

> "An employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer:
>
> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or
>
> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee."

49. A hostile-work-environment claim is designed to address conduct that is so severe or pervasive that it destroys an employee's opportunity to succeed in the workplace. *Gardner*, 414 S.W.3d at 382 (citing *City of Houston v. Fletcher*, 166 S.W.3d 479, 489 (Tex. App. Eastland 2005, pet. denied)).

50. To succeed on a TCHRA claim of hostile work environment, the complained-of conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Waffle House, Inc.*, 313 S.W.3d at 806 (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67, 106 S. Ct. 2399, 91 L. Ed. 2d 49 (1986)).

51. Plaintiff was subject to a hostile workplace because of the severe and pervasive bullying, ridicule, conspiring and harassment, including but not limited to consistent comments, threats, and inappropriate disciplinary action for having a disability, requesting accommodations for her disability as well as unwarranted and consistent aggressiveness by Walmart management and general staff. Defendants had actual knowledge of the hostile workplace Plaintiff endured and

encouraged White to continue his hostility and awful treatment of a disabled woman. Defendants failed to properly investigate or otherwise resolve this hostile work environment. The actions by Defendants and its employees, or lack thereof, created an abusive working environment that ultimately resulted in Plaintiff's wrongful termination.

## RESPONDEAT SUPERIOR AND RATIFICATION

52.   Whenever in this complaint it is alleged that the Defendants did any act or thing, it is meant that the Defendants' officers, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendants or was done in the normal and routine course and scope of employment of Defendants' officers, agents, servants, employees, or representatives.

## DAMAGES

53.   Plaintiff sustained the following damages as a result of the actions and/or omissions of Defendant described hereinabove:

    a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

    b. Back pay from the date that Plaintiff was denied equal pay for equal work and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

    c. All reasonable and necessary costs incurred in pursuit of this suit;

    d. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

    e. Inconvenience;

    f. Interest;

    g. Mental anguish in the past;

    h. Mental anguish in the future; and

    i. Loss of benefits.

## SPECIFIC RELIEF

54. Plaintiff seeks the following specific relief which arises out of the actions and/or omissions of Defendant described hereinabove:

    a. Neutral job reference; and

    b. An injunction against Defendants prohibiting discriminatory employment practices on the basis of disability and other protected categories.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff, Katrina Clemons, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; together with interest as allowed by law; costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**

Respectfully submitted,

/s/ Ali Crocker Russell
Ali Crocker Russell
State Bar No. 24098868
ali@cralawfirm.com

CROCKER RUSSELL & ASSOCIATES
200 W. Oak Street
Mansfield, Texas 76063
Tel: (817) 482-6570
Fax: (682) 232-1850

**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

On October 8, 2024, I electronically submitted the forgoing instrument with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule Civil Procedure 5(b)(2).

/s/ Ali Crocker Russell
Ali Crocker Russell